```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION


SOPHIA JONES-REDMOND,             )
                                  )
         Plaintiff,               )
                                  )
                                  )
                                  )
    v.                            )   No. 1:23-cv-5010
                                  )
                                  )
THORNTON FRACTIONAL TOWNSHIP      )
H.S. DIST. 215, RICHARD DUST,     )
in his individual capacity,       )
PATRICIA STEPP, in her            )
individual capacity, ANDREA       )
BALLARD, in her individual        )
capacity, DOMINIQUE NEWMAN, in    )
her individual capacity,          )
JACQUELINE TERRAZAS, in her       )
individual capacity, MARCIE       )
WILSON, in her individual         )
capacity,                         )
                                  )
         Defendants.              )
```

Memorandum Opinion and Order

Plaintiff Sophia Jones-Redmond sues her former employer, Thornton Fractional Township High School District 215 (the "District"), and the president and other individual members of its Board of Education, claiming that they terminated her without due process, and that the president of the Board, defendant Dust, tortiously interfered with her employment contract. A summary of events giving rise to plaintiff's claims is as follows:

Plaintiff was employed as Superintendent of the District under a contract running from July 1, 2021, through June 30, 2026. Plaintiff alleges that she performed her contractual responsibilities well, and that at her annual performance review in April of 2023, the Board rated her as exemplary in all categories. Shortly thereafter, defendants Stepp, Newman, and Terrazas were elected to replace three members of the Board who had participated in plaintiff's evaluation.

On May 25, 2023, Plaintiff was summoned to a closed session of the Board's regular scheduled meeting. There, defendant Dust told plaintiff that he had met with unnamed administrators who had complained in writing that plaintiff had verbally abused them. Plaintiff was not shown the written complaints, nor did she have any notice of them prior to the meeting. Plaintiff denied the allegations of verbal abuse and explained that she had "admonished an administrator because he made threats to parents" and "admonished an administrator for sending communications to parents riddled with grammatical errors." Compl. at ¶¶ 25, 26. Dust "ignored Plaintiff's denials and warned that she could face termination if she acted in such an unprofessional manner in the future." *Id*. at ¶ 27.

The following day, May 26, 2023, plaintiff reported to work. The same day, the District's counsel and defendant Stepp

2

contacted her to ask if she was resigning, and she told them that she was not. *Id.* at ¶¶ 31-32. Accordingly, Ms. Stepp emailed District employees informing them that plaintiff was not resigning. Plaintiff also sent a letter to defendant Dust saying she felt "blindsided" at the previous day's meeting and "not prepared to have the conversation with the Board regarding my meeting with the TFS administrative staff." Mot., ECF 10-1, Exh. 1.[1] She told Mr. Dust, "I do plan on retiring prior to 2026. I will not leave the district without a transition plan." *Id.* Plaintiff went on to describe the circumstances surrounding the complaints against her. She then stated:

> Threatening me with disciplinary action in the future is not ok, so given that it is best I not continue my tenure with the district. ... My level of trust with the Board is tarnished and I believe not reconcilable. Please note, I will continue to work with you and the Board to amicably transition into retirement.

*Id.* But two days later, on May 28, 2023, Mr. Dust allegedly instructed the District's counsel to inform plaintiff that she was prohibited from entering District facilities or contacting District staff. Compl. at ¶ 33. Plaintiff then apparently reversed course, telling District counsel on May 30, 2023, that she intended to honor her full contract. *Id.* at ¶ 35.

---

[1] I agree with defendant that I may consider this letter because plaintiff refers to it in her complaint, and it is central to her claims. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

3

Nevertheless, she was locked out of her District email account and told that her salary was terminated as of May 25, 2023, effectively terminating her employment. The Board ratified her termination on May 30, 2023, when it voted to replace her. *Id*. at ¶¶ 36-37. The following day, Mr. Dust sent an email to District employees falsely stating that plaintiff had resigned at the May 25, 2023, Board meeting, and he caused a local newspaper to publish information to the same effect.

On June 15, 2023, plaintiff received a letter from Mr. Dust stating:

> On behalf of the Board of Education of Thornton Fractional School District 215, I am writing to you with regard to your resignation on May 25, 2023. It has come to the attention of the Board that you are disputing the facts regarding and/or the effectiveness of your resignation.
>
> Based upon this dispute and in an effort to provide you with an opportunity to present your version of events pertaining to your resignation, the Board of Education is offering you a hearing regarding the same. ...

Mot., ECF 10-2, Exh. 2. Plaintiff declined to attend the hearing. This action followed, which defendants move to dismiss. I deny the motion for the following reasons.

"A public employee who can be fired only for good cause has a property interest in his or her job and may be deprived of that property interest only with due process of law." *Carmody v. Bd. of Trustees of Univ. of Illinois*, 747 F.3d 470, 474 (7th

4

Cir. 2014). Defendants do not dispute that plaintiff has a property interest in her job. They argue, however, that she resigned her position on May 25, 2023, and that "an employee who resigns—voluntarily relinquishing her interest in continued employment—may not complain of a lack of due process." *Ulrey v. Reichhart*, 941 F.3d 255, 261 (7th Cir. 2019). Relatedly, defendants acknowledge that due process generally requires notice and a pre-termination hearing, but they argue that because plaintiff's termination resulted from her unexpected resignation, a pre-termination hearing was infeasible. *See Simpson v. Brown Cnty.*, 860 F.3d 1001, 1006 (7th Cir. 2017). Accordingly, defendants insist that they satisfied their due process obligations by offering plaintiff a hearing after it became clear that she disputed her termination. Having declined to participate in that hearing, defendants contend, plaintiff cannot now be heard to complain that her due process rights were violated.

    Defendants' argument is not without traction, but it is grounded on a central fact that does not appear in the complaint, nor does it clearly emerge from the documents attached to defendants' motion, and that plaintiff disputes: that plaintiff resigned her position at the May 25 Board meeting. The first mention in the pleadings of plaintiff's putative resignation is

5

in her allegation that on May 26, she told defendant Stepp that she was *not* resigning her position—a message Stepp apparently understood, as she allegedly communicated it to other District employees. True, plaintiff told Dust that same day that she intended to retire prior to the expiration of her contract (a statement plaintiff apparently tried to walk back on May 30th). But what she contemplated in her letter to Dust was an "amicabl[e] transition" into retirement, not an abrupt termination of her duties and her salary. Drawing all inferences from the complaint and attachments to defendant's motion in the light most favorable to plaintiff, a reasonable conclusion— though not the only one—is that plaintiff did not resign but was summarily terminated after the Board's May 25, 2023, meeting. At this juncture, I cannot conclude that plaintiff's due process claim fails on the ground that she resigned her job.

Nor can I determine on the present record whether the post-termination hearing the Board offered to plaintiff was sufficient to satisfy due process. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks and citation omitted). In some circumstances, the state may satisfy due process through post-deprivation process, so long as that process is capable of

6

offering "meaningful redress for the particular injury suffered by the plaintiff." *Simpson*, 860 F.3d at 1010. "Meaningful post-deprivation remedies are 'characterized by promptness and by the ability to restore the claimant to possession.'" *Id*. Here, plaintiff concedes that on June 15, 2023, approximately two weeks after she made clear that she did not intend to resign and contested her termination, she was offered the opportunity to present "[her] version of the events pertaining to [her] resignation" at a hearing scheduled for the following week, but she declined to participate. In defendants' view, plaintiff's decision not to participate in that hearing amounted to a waiver of her due process rights, citing *Carmody v. Bd. of Trustees of Univ. of Illinois*, 747 F.3d 470 (7th Cir. 2014), and *Swank v. Smart*, 999 F.2d 263 (7th Cir. 1993). Again, their argument is colorable, but only when the facts concerning plaintiff's termination are construed in their favor.

"Even where there is a robust post-termination procedure...a meaningful opportunity to be heard before the employer decides on termination is a critical protection." *Carmody*, 747 F.3d at 475. On defendant's account of events, no pre-termination hearing was required or even possible, since plaintiff's termination was the result of her unforeseen resignation. While that may be true, if I credit plaintiff's

7

version—which I must do for present purposes—then plaintiff was summarily dismissed without the minimum process required by *Cleveland Board of Educ. v. Loudermill*, which includes "oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story." 470 U.S. 532, 546 (1985). In short, until discovery brings to light the details of what drove the Board's decision to replace plaintiff as Superintendent, the merits of her due process claim cannot be adjudicated.[2]

Plaintiff's claim against Mr. Dust for tortious interference with contract survives dismissal for similar reasons. Defendants argue that this claim must be dismissed because Dust acted as an agent of the Board with respect to the conduct plaintiff attributes to him, and a party cannot tortiously interfere with its own contract. That is correct as a legal proposition. *Douglas Theater Corp. v. Chicago Title & Tr. Co.*, 681 N.E.2d 564, 567 (Ill. 1997) ("[i]t is settled law that a party cannot tortiously interfere with his own contract."). But if, as plaintiff alleges, she was an exemplary

---

[2] For similar reasons, defendants' qualified immunity argument is premature. If, as plaintiff alleges, the Board voted to replace her ostensibly on the ground that she had resigned but actually knowing that she had not, then their misconduct was intentional and they are not shielded from liability by qualified immunity.

8

employee whom Dust targeted for ouster then removed on a ground he knew was pretextual, he was not acting in the Board's best interest. In such circumstances, a reasonable inference is that Dust acted outside the scope of his agency and in service of his own personal goals, in which case he may be liable for tortious interference with plaintiff's contract. *See Cox v. Calumet Pub. Sch. Dist. 132*, 180 F. Supp. 3d 556, 565 (N.D. Ill. 2016). For similar reasons, Dust is not entitled, at this stage, to dismissal of this claim based on the affirmative defense of absolute immunity, or to dismissal of plaintiff's prayer for punitive damages. *See id.* (declining to dismiss prayer for punitive damages because it was "too early to tell" if defendant was acting in her official capacity).

For the foregoing reasons, defendants' motion to dismiss is denied.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: January 5, 2024

9